ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JOSÉ M. PÉREZ VILLANUEVA<br><br>Apelantes<br><br>v.<br><br>MÁXIMO PÉREZ GONZÁLEZ Y OTROS<br><br>Apelados | KLAN202401051 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil. Núm. AG2021CV00262<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Pagán Ocasio, el Juez Rodríguez Flores y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Compareció el Sr. José M. Pérez Villanueva (en adelante, señor Pérez Villanueva o apelante), mediante recurso de *Apelación* presentado el 25 noviembre de 2024. Nos solicita que revoquemos la *Sentencia* que emitió el Tribunal de Primera Instancia, Sala Superior de Aguadilla, el 16 de octubre de 2024, notificada el día 18 del mismo mes y año.[2] En dicho dictamen, el foro de instancia desestimó la *Demanda* sobre incumplimiento de contrato que presentó el señor Pérez Villanueva contra el Sr. Maximino Pérez González (en adelante, el señor Pérez González o apelado), la Sra. Aida Elías Feliciano (en adelante, señora Elías Feliciano) y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante, matrimonio Pérez Elías).

---

[1]Mediante la Orden Administrativa OATA-2025-002 emitida el 9 de enero de 2025 se designó al Juez Isaías Sánchez Báez en sustitución del Juez Roberto Sánchez Ramos.
[2] Véase, Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (en adelante, "SUMAC-TPI"), entrada núm. 132.

Número Identificador

SEN2026 _____

Por los fundamentos que esbozamos a continuación, confirmamos la *Sentencia* apelada.

**-I-**

El 8 de marzo de 2021, el señor Pérez Villanueva presentó una *Demanda* sobre incumplimiento de contrato contra el matrimonio Pérez Elías.[3] Según expuso, durante el mes de diciembre de 2020, inició conversaciones con el señor Pérez González dirigidas a formalizar un contrato de arrendamiento de un edificio propiedad del apelado situado en la Avenida Victoria en Aguadilla, Puerto Rico. Alegó que le ofreció la suma de $600.00, como canon de arrendamiento mensual. Además, le pagaría por adelantado $3,000.00, por los primeros cinco (5) meses del contrato. No obstante, señaló que el día acordado para la firma del contrato, el señor Pérez González le informó que había arrendado la propiedad a otra persona. En vista de ello, alegó que el incumplimiento del apelado le causó daños económicos y mentales que estimó en $50,000.00.

El 7 de junio de 2022, el matrimonio Pérez Elías presentó su *Contestación a la Demanda.*[4] En esencia, el apelado negó la mayoría de las alegaciones, aunque aceptó que hubo discusiones sobre los términos de un posible contrato de arrendamiento, pero negó que las partes se pusieran de acuerdo con los términos y condiciones. En particular, sostuvo que no pudieron ponerse de acuerdo con el precio del alquiler. Añadió que la parte apelante hizo una oferta para pagar una renta mensual de $600.00, pero la rechazó. Aduce, además, que tampoco acordaron la celebración de un contrato por escrito en el futuro, por lo que nunca hubo un contrato o precontrato.

---

[3] Apéndice, anejo 2, págs. 2-6.
[4] Apéndice, anejo 3, págs. 7-10.

Tras varias incidencias procesales, el apelante presentó una *Solicitud Sentencia Sumaria*, en la que reiteró los argumentos expuestos en su reclamación.[5] Expuso, que no existía controversia en cuanto a que las partes iniciaron conversaciones para perfeccionar un contrato de arrendamiento sobre la propiedad del señor Pérez González. Adujo, que tampoco estaba en controversia que el señor Pérez González incumplió el preacuerdo cuando arrendó el inmueble a otra persona, por lo que tiene derecho a recobrar la totalidad del remedio solicitado.

Por el contrario, en su *Oposición a la Sentencia Sumaria de la Parte Demandante*, el apelado sostuvo que existía una controversia real y sustancial sobre el hecho de si hubo o no un contrato entre las partes.[6] Por tanto, concluyó que no procedía que el pleito se resolviera de manera sumaria.

Después de examinar las posiciones de las partes y la prueba presentada, el foro de instancia resolvió que existían hechos pertinentes en controversia que impedían que la causa se resolviera por la vía sumaria.[7] En específico, determinó como hechos en controversia los siguientes:

1. Si existió un precontrato entre las partes.

2. Si existió un contrato entre las partes.

3. Si el demandante ofreció al Sr. Pérez González alquilar la propiedad por la suma de $600.00 mensuales.

4. Si el Sr. Pérez González le expresó al demandante que alquilaría la referida propiedad por $1,000.00 mensuales.

5. Si el Sr. Pérez González le informó al demandante que había otras personas interesadas en el alquiler de la propiedad y que la posibilidad de alquilar al demandante dependía del pago de $1,000.00 mensuales.

6. Si las partes acordaron que el arrendamiento de la propiedad sería por el término de un año a cambio de una suma inicial $3,000.00, por los primeros 5 meses, a razón de $600.00; y, en adelante, $600.00 mensuales.

---

[5] Apéndice, anejo 6, págs. 19-22.
[6] Apéndice, anejo 7, págs. 23-26.
[7] Apéndice, anejo 9, págs. 39-47.

7. Si las partes acordaron una fecha para otorgar el contrato por escrito.

En consideración a lo anterior, el tribunal primario declaró No Ha Lugar la *Solicitud Sentencia Sumaria* presentada por el señor Pérez Villanueva y ordenó la continuación de los procedimientos.

Tras múltiples incidencias procesales, el juicio comenzó el 10 de septiembre de 2024. Luego de evaluar la prueba presentada por las partes durante el trámite judicial, el tribunal primario emitió *Sentencia*, en la que consignó las siguientes determinaciones de hechos:

1. El demandante, José M. Pérez Villanueva, es mayor de edad, soltero, abogado y vecino de Aguada, Puerto Rico.
2. Los demandados Maximino Pérez González y Aida Elías Feliciano son mayores de edad, casados entre sí, propietarios y vecinos de Aguadilla, Puerto Rico.
3. Las partes fueron vecinos en la Urbanización Victoria de Aguadilla, por lo que se conocen desde hace muchos años.
4. El demandado, además de vecino, fue cliente del demandante en su práctica legal.
5. La parte demandante tiene su oficina de abogado en la Avenida Victoria en Aguadilla, Puerto Rico.
6. El demandante hizo un acercamiento al demandado para auscultar la disponibilidad del local y el demandado le indicó que la inquilina aun lo ocupaba, pero esperaba que lo entregara en poco tiempo.
7. Las partes estuvieron en conversaciones desde finales de noviembre de 2020 hasta la primera o segunda semana de enero del año 2021.
8. El demandante expresó que le envió un borrador de contrato al demandado para su evaluación y firma, pero este último no lo suscribió.
9. El testigo de la parte demandante, Armando Sánchez, expresó que fue al local junto al demandante para evaluar el mismo y verificar qué mejoras debían realizarse, sin embargo, nunca observó un contrato o tuvo conocimiento de que las partes hubiesen llegado a algún acuerdo sobre el arrendamiento del local.
10. Nunca se suscribió contrato alguno entre las partes.
11. No se presentó prueba alguna de daños y pérdida económica por la parte demandante.

Finalmente, resolvió que no hubo prueba que demostrara que hubo un contrato entre las partes. Por consiguiente, desestimó la *Demanda* presentada.

En desacuerdo con lo resuelto, el apelante solicitó reconsideración de dicho dictamen.[8] Sin embargo, el foro primario denegó su petición.[9]

Aún inconforme, el apelante acudió ante este tribunal intermedio mediante el recurso de epígrafe en el que señaló la comisión de los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL, AL NO APLICAR LA DOCTRINA DE TESTIGO ADVERSO.
>
> ERRÓ EL HONORABLE TRIBUNAL, AL NO APLICAR LA DOCTRINA DE "LA DOCTRINA DE LA CULPA IN CONTRAHENDO."
>
> ERRÓ EL HONORABLE TRIBUNAL, AL CONCLUIR QUE NO SE PRESENTÓ PRUEBA DOCUMENTAL ALGUNA QUE SUSTENTE LAS ALEGACIONES.

**-II-**

**A. Teoría general de contratos**

El contrato nace a la vida jurídica cuando "dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Artículo 1230 del Código Civil de 2020, 31 LPRA sec. 9751; *Unisys Puerto Rico, Inc. v. Ramallo Brothers,* 128 DPR 842, 852 (1991); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 886 (2008); *Collazo Vázquez v. Huertas Infante,* 171 DPR 84, 102 (2007). Los requisitos para la perfección de un contrato son: (1) consentimiento de los contratantes; (2) objeto cierto, y (3) causa lícita. 31 LPRA sec. 9771; *García Reyes v. Cruz Auto Corp.,* supra, 885; *Rivera v. PRAICO,* 167 DPR 227, 232 (2006). Cuando coexisten estos elementos, un contrato es mandatorio en la manera que se haya celebrado. 31 LPRA sec. 6161.

En nuestro ordenamiento jurídico, impera el principio de libertad de contratación que le permite a las partes pactar las cláusulas y condiciones que entiendan, siempre que estas no sean contrarias a la ley, moral u orden público. *Id.,* sec. 9753; *Guadalupe*

---

[8] Apéndice, anejo 11, págs. 50-55.
[9] SUMAC-TPI, entrada núm. 136.

*Solís v. González Durieux*, 172 DPR 676, 683 (2007); *Álvarez v. Rivera*, 165 DPR 1, 17 (2005); *Torres, Torres v. Torres Serrano*, 179 DPR 481, 493 (2010); *Oriental Finances Services v. Nieves*, 172 DPR 462, 470-471 (2007). Entonces, el contrato "queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". 31 LPRA sec. 9771; *Collazo Vázquez v. Huertas Infante*, supra, pág. 103; *López v. González*, 163 DPR 275, 282 (2004).

A tales efectos, existe un principio conocido como *pacta sunt servanda* o la autonomía de la voluntad que supone la obligatoriedad de lo acordado según sus términos y condiciones. 31 LPRA sec. 9754; *Utility Consulting Services v. San Juan*, 115 DPR 88, 90 (1984); *Banco Popular v. Sucn. Talavera*, 174 DPR 686, 693 (2008). Dicho de otro modo, "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". *VDE Corp. v. F & R Contractors*, 180 DPR 21, 34 (2010); *López v. González*, supra, pág. 281.

**B. El contrato preliminar**

El perfeccionamiento de un contrato conlleva varias etapas. *PRFS v. Promoexport*, 187 DPR 42, 52 (2012). A saber, la etapa preliminar preparatoria, una de perfección y una ejecutoria. *Id.* En la primera etapa, las partes inician los tratos o negociaciones preliminares, mientras que, en la segunda, concurren los requisitos para la perfección del contrato. *Id.*, págs. 52-53. Por último, en la tercera etapa, se lleva a cabo el cumplimiento de la obligación pactada. *Id.*, pág. 53.

Ahora bien, cuando se trata de las negociaciones preliminares, el Código Civil de Puerto Rico, en su Artículo 1271, 31 LPRA sec. 9881, establece que:

> **Los tratos previos a la perfección del contrato deben desarrollarse conforme a la lealtad y la buena fe** entre los probables contratantes. Se exige especialmente **el deber de colaborar** en la formación del contrato, obtener y proporcionar información de circunstancias de hecho y derechos relevantes, **mantener la confidencialidad** de la información recibida y **conservar el bien** que será objeto del contrato futuro. (Énfasis suplido).[10]

Los tratos preliminares no producen ningún efecto jurídico de manera inmediata, pues aún no ha nacido la obligación contractual. *PRFS v. Promoexport*, supra, págs. 53-54. Sin embargo, en ciertas instancias, estos tratos o conversaciones podrían generar responsabilidad si se ejercen de manera abusiva. *Id.*, pág. 55; *Prods. Tommy Muñiz v. COPAN*, 113 DPR 517, 528 (1982).

Aunque nadie está obligado a contratar, nuestro ordenamiento jurídico ha reconocido que las negociaciones previas pueden generar una relación de carácter social "que impone a las partes el deber de comportarse de acuerdo con la buena fe". *Colón v. Glamorous Nails*, 167 DPR 33, 44 (2006); *Prods. Tommy Muñiz v. COPAN*, supra, 526. Véase, además, *PRFS v. Promoexport*, supra. Esto quiere decir, que las partes pueden retirarse de los tratos precontractuales, pero existen límites en cuanto a la forma de hacerlo. *PRFS v. Promoexport*, supra, pág. 55. De esta forma, nuestro ordenamiento reconoció la doctrina de la *culpa in contrahendo* que consiste en:

> una obligación hacia una persona determinada, que surge en aquel momento en el curso de las negociaciones en el cual el ejercicio del derecho de una parte a retirarse, corolario del principio de la autonomía de la voluntad, activa la protección de la confianza depositada por la otra y resulta contrario al principio inmanente de la buena fe. *Id.*, pág. 58.

Sobre este particular, el Código Civil establece que:

---

[10] Además, en los comentarios del Código Civil Comentado se dispuso sobre dicho artículo que la "[n]egociación (tratativa) precontractual es todo acto voluntario lícito realizado por alguna de las partes de un contrato futuro, enderezado a su celebración. El concepto excede el de acto jurídico, ya que las meras conversaciones, o la reparación de objetos, por ejemplo, carecen claramente del fin de producir efectos jurídicos de modo directo, y sin embargo, en el contexto adecuado son tratos previos". Véase, Artículo 1271 del Código Civil Año 2020 Comentado, en https://www.oslpr.org/_files/ugd/5be21a_15cd7772b7ca4ecd84 035ed394e1e517.pdf (última visita, 28 de mayo de 2026).

Constituyen violación a los deberes de conducta exigidos durante la etapa precontractual, especialmente, las siguientes acciones u omisiones:

(a) romper las negociaciones de forma repentina, inoportuna o arbitrariamente;
(b) no respetar los acuerdos parciales ya logrados;
(c) iniciar o continuar sin seriedad las negociaciones;
(d) incurrir en dolo o violencia;
(e) revocar una oferta vinculante o, repentinamente, una oferta no vinculante; y
(f) causar la nulidad de un contrato.

Deben resarcirse los gastos efectuados para celebrar el contrato y el daño sufrido por haber confiado en la celebración válida del contrato. Igual resarcimiento se debe respecto a los gastos efectuados por el aceptante que ignora, sin culpa, la muerte o incapacidad sobrevenida del oferente, o por quien, al aceptar, ignora sin culpa la retractación del oferente. Artículo 1272 del Código Civil, 31 LPRA sec. 9882.

También, el Tribunal Supremo ha expresado que para determinar si ha mediado culpa por causa del rompimiento de las negociaciones preliminares, es necesario examinar las circunstancias del rompimiento. *Prods. Tommy Muñiz v. COPAN*, supra, pág. 530. En particular: "(1) el desarrollo de las negociaciones, (2) cómo comenzaron, (3) el curso que siguieron, (4) la conducta de las partes durante el transcurso, (5) la etapa en que se produjo el rompimiento, y (6) las expectativas razonables de las partes en la conclusión del contrato, así como cualquier otra circunstancia pertinente conforme los hechos del caso sometidos a escrutinio judicial". *Id.*

**-III-**

Para el apelante, el foro de instancia incidió al no aplicar la doctrina de testigo adverso. Asegura que luego de que la parte apelada se anunciara como testigo, su renuncia activó la presunción de testigo adverso que establece la Regla 304 (5) de las Reglas de Evidencia, 32 LPRA Ap. VI. Entiende que ser parte no impide que se aplique dicha presunción.

Sin embargo, el apelado opina que el error no se cometió, pues el señor Pérez González es la parte demandada en el caso y no viene obligada a declarar como testigo luego de presentarse la prueba.

En su segundo error, el señor Pérez Villanueva sostiene que entre las partes hubo un precontrato verbal que el apelado quebrantó cuando arrendó a otra persona el edificio que interesaba alquilar. Asegura que el señor Pérez González hizo una oferta que este aceptó, para celebrar un contrato escrito y definitivo en el futuro. Por ello, entiende que el tribunal primario incidió al no aplicar la doctrina de *culpa in contrahendo*.

Por el contrario, el señor Pérez González sostiene que entre las partes no hubo un acuerdo de voluntades sobre los elementos esenciales del contrato de arrendamiento, ni un interés común para perfeccionar el contrato. En particular, sobre el canon de arrendamiento. Por tal razón, entiende que no puede haber un rompimiento injustificado de los tratos previos como alega el señor Pérez Villanueva.

Por otro lado, el apelante también alega que el foro de instancia erró al concluir que no se presentó evidencia documental que apoyara sus alegaciones. En su opinión, la prueba estipulada por las partes, además de la prueba testifical, demostró que hubo un quebrantamiento arbitrario de las negociaciones preliminares.

Por su parte, la parte apelada asegura que el señor Pérez Villanueva no pudo presentar prueba alguna que sustentara sus alegaciones.

Un examen minucioso de los documentos presentados por las partes y los testimonios vertidos en el juicio de la causa de epígrafe nos mueve a confirmar la determinación del tribunal apelado. Nos explicamos.

Ciertamente, en este caso no podemos concluir que las conversaciones preliminares entre las partes tuvieron el efecto jurídico que el apelante le quiere imputar al señor Pérez González. Mucho menos, que se hayan roto de forma repentina y arbitraria como alega, pues los tratos preliminares que ambos sostuvieron se

limitaron a la presentación de una oferta, por parte del apelante, que posteriormente el apelado rechazó.

Del propio testimonio del señor Pérez Villanueva surge que este le hizo un acercamiento al apelado para arrendar un edificio de su propiedad y que, en ese entonces, se encontraba arrendado por otra persona. En esta conversación inicial, el apelado le expresó que no iba a arrendar el inmueble, hasta que no le entregaran el local y le pagaran un dinero adeudado.[11] Más adelante, el apelante declaró que en los encuentros que sostuvo con el señor Pérez González se limitó a reiterar su interés en el arrendamiento del local en cuestión.[12]

No se deprende que las partes llegaran a unos acuerdos específicos sobre el arrendamiento de la propiedad. Más bien las reuniones que sostuvo con el señor Pérez González en "par de ocasiones" giraron sobre su interés en alquilar el local y el monto que estaba dispuesto a pagar por el arrendamiento del inmueble, y sobre el cual no hubo un acuerdo entre las partes.[13]

Específicamente, el apelante aseguró que le ofreció al señor Pérez González la cantidad de $600.00, como pago de renta mensual y que este aceptó. Sin embargo, como parte de los hechos estipulados por las partes consta que "el señor Maximino Pérez González, indicó que se lo podía rentar al Lcdo. Pérez Villanueva, pero la renta era de $1,000.00". Hecho que negó el apelante durante el juicio.[14] Aunque, posteriormente, el señor Pérez Villanueva trató de retirar esta estipulación, este no solicitó autorización para ello, ni el foro de instancia le permitió retirarla. *Díaz Ayala et al. v. ELA*, 153 DPR 675, 693 (2001). Cabe señalar, que una estipulación sobre un hecho no puede ser impugnada posteriormente. *Rivera Menéndez*

---

[11] Transcripción de la prueba oral (en adelante, "TPO"), pág. 12, líneas 3-8.
[12] TPO, pág. 12, líneas 16-22.
[13] TPO, pág. 13, líneas 13-17; pág. 38, líneas 1-22; pág. 39, líneas 1-9; pág. 41, líneas 9-20.
[14] TPO, pág. 66, líneas 12-19; pág. 67, líneas 1-2.

*v. Action Services,* 185 DPR 431, 439-440 (2012). Por consiguiente, esta obliga al tribunal como a las partes. *Id.*

En mérito de lo anterior, no albergamos duda de que en este caso la parte apelante no produjo prueba suficiente para persuadir al foro apelado que hubo un rompimiento arbitrario y de mala fe de las negociaciones preliminares, pues las conversaciones que sostuvieron las partes constituyeron meros tratos que no tuvieron ningún efecto jurídico dirigido a concretizar el contrato de arrendamiento, según colegimos de la estipulación entre las partes. Ni tan siquiera existió un acuerdo sobre el canon de arrendamiento, elemento esencial para perfeccionar el contrato. Artículo 1230 del Código Civil de 2020, *supra.* En consecuencia, el presente caso carece de prueba creíble que demuestre que hubo una oferta vinculante que pudiera revocar la parte apelada, al arrendar el local a otra persona dispuesta a pagar el canon exigido. Por tal razón, concluimos que el expediente en autos está huérfano de evidencia que sustente que existió un precontrato o que se violentó la buena fe o algún otro de los deberes impuestos por la ley durante la etapa precontractual. *Prods. Tommy Muñiz v. COPAN*, supra.

Es importante recordar que el TPI concluyó que la parte apelante no presentó prueba sobre los daños. Ello, por sí solo, es suficiente para determinar que no se probó la causa de acción.

Por último, sobre el primer señalamiento de error, aun cuando asumiéramos que este se cometió, solo para efectos de nuestro razonamiento, dicha conclusión no afectaría ni variaría nuestra determinación final. Por consiguiente, resulta innecesario entrar en sus méritos.

**-IV-**

Por los fundamentos que anteceden, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones